

**CT Corporation**
**Service of Process Notification**
12/14/2022
CT Log Number 542853273

## Service of Process Transmittal Summary

**TO:** Laura Fraatz
Providence Health & Services
C/O RISK MANAGEMENT, 1801 LIND AVENUE SW #9016
RENTON, WA 98057-9016

**RE:** **Process Served in Washington**

**FOR:** Providence Health & Services - Washington  (Domestic State: WA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: JASON MCCAULEY // To: Providence Health & Services - Washington |
| **CASE #:** | 2220435632 |
| **NATURE OF ACTION:** | Employee Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, Olympia, WA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 12/14/2022 at 14:14 |
| **JURISDICTION SERVED:** | Washington |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  PSORisk ManagementServiceofProces  psorisk.managementserviceofprocess@providence.org |
| | Email Notification,  Christina Benedict  christina.benedict@providence.org |
| | Email Notification,  Bonnie Harrison  bonnie.harrison@providence.org |
| **REGISTERED AGENT CONTACT:** | C T Corporation System
711 Capitol Way S
Suite 204
Olympia, WA 98501
877-564-7529
MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

**COPY**
Original Filed

DEC 1 2 2022

TIMOTHY W. FITZGERAI
SPOKANE COUNTY CLEF

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF SPOKANE

JASON MCCAULEY,

    Plaintiff,

vs.

PROVIDENCE HEALTH & SERVICES, WA,

    Defendant.

Case No. 22204356-32

SUMMONS - PROVIDENCE HEALTH & SERVICES, WA

TO: PROVIDENCE HEALTH & SERVICES, WA

A lawsuit has been started against you in the above entitled court by Jason McCauley.

Plaintiff's claims are stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what he

SUMMONS - 1

asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this summons. Within 14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service on you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this 12th day of December 2022.

Riverside Law Group, PLLC

By: _____
Matthew Z. Crotty, WSBA No. 39284
Casey M. Bruner, WSBA No. 50168
905 West Riverside Ave. Ste. 404
Spokane, Washington 99201
Telephone No. 509.850.7011

Attorneys for Plaintiff

SUMMONS - 2

|  | (Copy Receipt) | Clerk's Date Stamp |
|---|---|---|
|  SUPERIOR COURT OF WASHINGTON COUNTY OF SPOKANE | | JUDGE ANNETTE S. PLESE 98 |
| MCCAULEY, JASON<br><br>Plaintiff(s)/Petitioner(s),<br>vs.<br>PROVIDENCE HEALTH AND SERVICES WA<br><br>Defendant(s)/Respondent(s). | | CASE NO. 22-2-04356-32<br><br>CASE ASSIGNMENT NOTICE AND ORDER (NTAS)<br><br>CASE STATUS CONFERENCE DATE:<br>MARCH 17, 2023 AT 8:30 AM |

## ORDER

YOU ARE HEREBY NOTIFIED that this case is preassigned for all further proceedings to **JUDGE Annette S. Plese.**

**You are required to attend a Case Status Conference before your assigned judge on the date also noted above. The Joint Case Status Report must be completed and brought to the Status Conference. A Case Schedule Order, with the trial date, will be issued at the Status Conference.**

Under the individual calendar system, the court will operate on a four-day trial week. Trials will commence on Monday, Tuesday, Wednesday or Thursday. Motion Calendars are held on Friday. All motions, other than ex parte motions, must be scheduled with the assigned judge. Counsel must contact the assigned court to schedule motions and working copies of all motion pleadings must be provided to the assigned court at the time of filing with the Clerk of Court. Pursuant to LCR 40 (b) (9), motions must be confirmed no later than 12:00 noon three days before the hearing by notifying the judicial assistant for the assigned judge.

Please contact the assigned court to schedule matters regarding this case. You may contact the assigned court by phone, court department e-mail or through the Spokane County Superior Court web page at **https://www.spokanecounty.org/4625/Superior-Court**

DATED: 12/12/2022

JULIE M. MCKAY
PRESIDING JUDGE

NOTICE: The plaintiff shall serve a copy of the Case Assignment Notice on the defendant(s).

CASE ASSIGNMENT NOTICE    LAR 0.4.1(b)    (4/2001)    CASGN    Page 1 of 1

COPY
Original Filed
DEC 12 2022
TIMOTHY W. FITZGERALD
SPOKANE COUNTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF SPOKANE

| | |
|---|---|
| JASON MCCAULEY,<br><br>Plaintiff,<br><br>vs.<br><br>PROVIDENCE HEALTH & SERVICES, WA,<br><br>Defendant. | Case No. 22204356-32<br><br>COMPLAINT & DEMAND FOR JURY TRIAL |

The Plaintiff, JASON MCCAULEY, by and through MATTHEW Z. CROTTY and CASEY M. BRUNER, of RIVERSIDE LAW GROUP, PLLC, complains of Defendant and alleges as follows:

I. PARTIES, JURISDICTION, & VENUE

1. Jason McCauley was employed by the above-captioned Defendant during the time-frame relevant to this lawsuit and worked in Spokane County, Washington, on behalf of Defendant.

2. Defendant Providence Health & Services, WA (Providence) conducted business in

COMPLAINT & DEMAND FOR JURY TRIAL - 1

Spokane County, Washington at all times relevant to this lawsuit.

3. The Spokane County Superior Court has jurisdiction over this case.

4. Venue is proper in Spokane County because, *inter alia*, Defendant conducts business in Spokane County, and because acts and omissions giving rise to Mr. McCauley's complaint took place in Spokane County, Washington.

## II. FACTS

5. Mr. McCauley incorporates the above facts as if pled verbatim herein.

6. Providence hired Mr. McCauley in 2006 to work as a night pharmacist on a seven day on/seven day off schedule. During his week off Mr. McCauley worked four day shifts at Lincoln County Public Hospital District No. 3 in a pharmacist capacity.

7. Providence has varied business units including Providence Medical Group (PMG). PMG employees work in the company's primary or specialty medical clinics where as individuals, like Mr. McCauley, who work in the Providence Sacred Heart Medical Center are referred to as "Ministry" employees.

8. Mr. McCauley informed, among others, Paul Lacey (one of his supervisors at Providence) that he was working on his off time, at Lincoln County Public Hospital District No. 3, and Mr. Lacey, among others, provided his approval of Mr. McCauley doing so.

9. Providence constantly gave Mr. McCauley outstanding yearly evaluations.

10. Up until his termination (more on that below), Providence never disciplined Mr. McCauley, placed him on a performance improvement plan, or took any action critical of his workplace performance.

COMPLAINT & DEMAND FOR JURY TRIAL - 2

11. In fact, Mr. McCauley missed only three nights of work during his entire 16 years of service to Providence with two of those days involving a sick family member and the other involving inclement weather.

12. During the 2020-2021 timeframe Mr. McCauley and his co-workers were supervised by Lance Muncey.

13. To put it politely, Mr. Muncey's leadership (or lack thereof) was atrocious.

14. Mr. Muncey's poor leadership resulted in numerous pharmacists transferring, resigning, or being fired.

15. Mr. Muncey's acts, among other things, motivated Mr. McCauley to initiate the formation of a union.

16. On October 28, 2020, Mr. McCauley sent out emails to fellow pharmacists he thought would be open to pursuing a union. Those pharmacists were: Kristen Soohok-Edgar, Stephanie Cooper, Sarah Marrinan, Gina Avdeyenko, Zuly Eden, Matt Atkinson, and Alan Leong.

17. On November 2, 2020, Mr. McCauley emailed Ms. Eden an email titled *"Unionization"* where Mr. McCauley laid out the process for a National Labor Relations Board (NLRB) union vote. On November 4, 2020, Mr. McCauley emailed Sarah Marrinan, Zuly Eden, Alan Leong, Elena Inouye, Eric Mclauglin, Stephanie Cooper, Kristen Soohook-Edgar, Denny Tansy, Travis Laselle, Sandra Avelar inquiring about having a Zoom meeting to discuss getting a union representative.

18. On November 5, 2020, Mr. McCauley set up a shared google document with Stephanie Cooper titled *"Union Questions"*.

COMPLAINT & DEMAND FOR JURY TRIAL - 3

19. On November 6, 2020, Mr. McCauley set up a Zoom meeting with UFCW-21 union representatives Matt Loveday and Jose Veliz.

20. On January 12, 2021, Stephanie Cooper emailed Mr. McCauley in reference to a meeting with Mr. Muncey (who had just received the results of a supposedly anonymous survey) stating that "[a]fter our threatening pharmacist meeting discussing the survey results, that 'our comments are not confidential and that they can narrow down based on which supervisor you have which comments might have come from certain people, and we will be talking about them with you in your evaluation', there is certainly another movement to do something."

21. On January 25, 2021, the pharmacists decided that they should proceed with UFCW-21 union. Mr. McCauley submitted his electronic "union card" for UFCW-21 to represent him.

22. On April 9, 2021, a Zoom meeting was arranged between Mr. McCauley and several members of the Sacred Heart lab staff. This was the first link between the lab and pharmacy department unionization efforts. At this time Mr. McCauley began working with another union organizer (Andrea Haverkamp) to spearhead unionization efforts at Providence.

23. On April 25, 2021, Mr. McCauley received an email from Autumn Bogart (Medical Laboratory Scientist) in which Ms. Bogart let on that she and her husband would be setting up a website at https://unionizeshmcprofes.wixsite.com/website to support the unionizing effort.

24. On May 10, 2021, Mr. Bogart sent out an email about holding informational meetings three times per week for Q&A. Union organizer, Ms. Haverkamp, was also invited.

25. On May 23, 2021, Ms. Haverkamp provided possible dates for the informational meetings.

**COMPLAINT & DEMAND FOR JURY TRIAL** - 4

26. On June 7, 2021, Mr. McCauley learned that anti-Union HR meetings were being held with notices of those meetings being sent through the Providence/Sacred Heart hospital email system. The union then sent out PDF flyers (some like a bingo card) that one could read and take to the meetings in order to decrease the intimidation by management.

27. On September 3, 2021, Mr. McCauley made an ethics complaint centering on Brent Albertson, the Pharmacy Director, hiring his best friend, Derek Barnhart. Mr. McCauley concluded his ethics complaint stating "there is a discussion of forming a pharmacy union (with other departments as well) at Sacred Heart. I think this will be another example the employees can point to that show we will need a union contract to protect us from such 'friendship nepotism' as shown by this tone-deaf display of managerial discretion."

28. That same day Mr. McCauley was informed, via email, that his ethics compliant had been referred to "Human Resources in order to be properly addressed."

29. Mr. McCauley's direct supervisor, Paul Lacey, was aware of Mr. McCauley's unionizing efforts because Mr. McCauley told him that he was leading said efforts in, at least, August 2021. This August 2021 conversation took place the first night that Mr. McCauley worked with Mr. Lacey since Mr. Lacey's return to the evening supervisor role. This conversation took place in the Pharmacy Operations Manager office that Mr. Lacey recently occupied before stepping down to the evening pharmacist supervisor position. Present that night was Mr. McCauley's night partner, pharmacist Denny Tansy. During this conversation with Mr. Lacey, Mr. Lacey talked about how he did everything he could to restrain Mr. Muncey's counterproductive actions or have him transferred. Mr. McCauley told Mr. Lacey, "thank you" and "I've also done my part by starting the union

COMPLAINT & DEMAND FOR JURY
TRIAL - 5

organizing."

30. On or around December 15, 2021, Mr. McCauley applied for caregiver FMLA so as to assist his wife during her total knee replacement surgery. Mr. McCauley made his application under the auspices of Washington's Paid Family & Medical Leave Act (PFMLA).

31. Mr. McCauley's FMLA leave lasted from December 27, 2021, through March 22, 2022.

32. In applying for FMLA Mr. McCauley completed a company-required Washington Paid & Medical Leave form in which he reported that both Providence *and* Lincoln County Public Hospital District No. 3 were his current employers.

33. On March 22, 2022, (the day before he was to return to work) Mr. McCauley was texted by Mr. Lacey and told there would be a conference call with HR the following morning. Mr. Lacey did not tell Mr. McCauley what the call was about even though Mr. McCauley asked.

34. On March 23, 2022, Mr. McCauley conferenced with HR as instructed and was placed into a phone conference with HR (Lourie Morse), his immediate supervisor (Paul Lacey), and his manager (Derek Barnhart).

35. This meeting lasted approximately five minutes. At the meeting's end Mr. Barnhart told Mr. McCauley he was being fired because during the FMLA he worked at Lincoln County Hospital.

36. Shocked, Mr. McCauley asked HR (Lourie Morse) to provide him with the policy that forbade him from moonlighting while on FMLA.

37. In fact, the "Leave of Absence – Family Medical Leaves and Other Leaves Policy",

COMPLAINT & DEMAND FOR JURY TRIAL - 6

adopted September 1, 2013, and last reviewed/revised June 1, 2021, contains no moonlighting prohibition for those on caregiver FMLA unless "the outside employment requires performance of duties that are restricted or prohibited at the ministry in accordance with a current medical certificate" - - - a stipulation that did not apply to Mr. McCauley because there was no "medical certificate" restricting or prohibiting Mr. McCauley from his Providence duties.

38. Compounding this shock was the fact that Mr. Lacey had known (for years) that Mr. McCauley moonlighted at Lincoln County Hospital.

39. Following his termination Mr. McCauley requested in writing (on at least April 6, 2022, and April 19, 2022) a copy of his personnel file as well as the policy he allegedly violated.

40. As of November 18, 2022, Providence has not provided Mr. McCauley with the policy he allegedly violated.

### III. CAUSES OF ACTION

41. Mr. McCauley incorporates the above paragraphs as if pled verbatim herein.

(Count One & Two – Violation of the Family Medical Leave Act (FMLA) – Interference and Retaliation)

42. The elements of an FMLA interference claim require proof the employee (1) was eligible for the FMLA's protections, (2) the employer was covered by the FMLA, (3) the employee was entitled to leave under the FMLA, (4) the employee provided sufficient notice of [his] intent to take leave, and (5) the employer denied her FMLA benefits to which [he] was entitled." *Bushfield v. Donahoe*, 912 F. Supp. 2d 944, 953 (D. Idaho 2012) (citing *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011)). "The employer's intent is irrelevant to a determination of liability in an interference claim." *Id.* (citing *Sanders*).

**COMPLAINT & DEMAND FOR JURY TRIAL** - 7

43. Mr. McCauley was eligible for FMLA's protections. Mr. McCauley worked in excess of 1,250 hours for Providence in the year prior to June 15, 2021.

44. Providence is an FMLA covered employer. During the timeframe relevant to this lawsuit Providence employed in excess of 50 employees within a 75-mile radius of Mr. McCauley's worksite.

45. Mr. McCauley was entitled to FMLA leave to care for his wife who was recovering from surgery.

46. Mr. McCauley informed Providence of his intent to take FMLA leave.

47. Providence denied Mr. McCauley the benefit of FMLA eligibility by firing him for moonlighting even though Mr. McCauley's moonlighting is not prohibited by FMLA or company policy.

48. As it relates to the FMLA retaliation claim a plaintiff must show "(1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the two actions." *Bourgo v. Canby Sch. Dist.*, 167 F. Supp. 2d 1173, 1179 (D. Or. 2001). And circumstantial evidence of close proximity between the protected FMLA leave and discharge, standing alone, is enough to withstand summary judgment. *Foraker v. Apollo Grp., Inc.*, 427 F. Supp. 2d 936, 942 (D. Ariz. 2006) *aff'd*, 302 F. App'x 591 (9th Cir. 2008); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir.2000).

49. Mr. McCauley took leave under the FMLA from December 27, 2021, through March 23, 2022.

**COMPLAINT & DEMAND FOR JURY TRIAL - 8**

50. Providence fired Mr. McCauley the day he returned from his caregiver FMLA.

51. A causal connection exists for the reasons set out in the above-paragraphs including (a) the closeness in time between FMLA ending and discharge, (b) Providence not having *any* documented performance issues with Mr. McCauley until *after* he returned from FMLA, and (c) Providence firing Mr. McCauley for conduct (moonlighting so long as it didn't violate the terms of a medical leave certification) that was allowed under Providence policy.

52. Providence's violations of the FMLA are willful. A HR professional presided over the firing. Unquestionably an HR professional knows, or should know, that a company cannot fire someone for moonlighting on FMLA as long as that moonlighting is not barred by company policy. Surely Providence HR knew better, but either assisted Providence in violating the FMLA or sat idly by and allowed Mr. McCauley's management to fire him without legitimate reasons.

53. Providence's violations of the FMLA caused Mr. McCauley damages in an amount to be proven at trial.

(Counts Three & Four – Wrongful Discharge in Violation of Public Policy – Union Organizing & PFMLA/FMLA usage)

54. An employee states a cause of action in tort for wrongful discharge if the discharge contravenes a clear mandate of public policy.

55. In assessing whether a clear mandate of public policy is violated courts inquire as to whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme.

56. The federal Family Medical Leave Act, 28 U.S.C. § 2601 *et seq* and Washington State's Paid Family Medical Leave Act, RCW 50A.40.010 are clear mandates of public policy. *See*

**COMPLAINT & DEMAND FOR JURY TRIAL** - 9

*e.g. Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1138 (9th Cir. 2003); *Fischer v. City of Roslyn*, 162 Wn. App. 1039 (2011) ("Washington has a clear public policy under the FMLA and the WFLA entitling all employees to take reasonable medical leave."); *Macon v. United Parcel Serv., Inc.*, No. C12-260 RAJ, 2012 WL 5410289, at *8 (W.D. Wn. Nov. 5, 2012)("WFLA and FMLA both express a clear public policy of protecting an employee's right to reasonable medical leave.").

57. The Washington State Supreme Court holds that RCW 49.32.020 confers substantive rights upon employees to be free from interference, restraint, or coercion by their employers if that employee seeks collectively to improve working conditions as set out under RCW 49.32.020. *Bravo v. Dolsen Companies*, 125 Wn.2d 745 (1995). This law also gives workers the right to "have full freedom of association, self-organization, and designation of representatives of his or her own choosing." Accordingly, RCW 49.32.020 is also a clear mandate of public policy.

58. Among other things, RCW 49.32.020 allows an employee to "negotiate the terms and conditions of his or her employment" and to be "free from interference, restraint, or coercion" of his or her employer while doing so.

59. Here Mr. McCauley exercised his rights to take FMLA leave, PFMLA leave, and conduct unionizing efforts so as to better the working conditions of he and his fellow pharmacists.

60. Mr. Lacey as well as Providence HR were aware of Mr. McCauley's unionizing efforts. Indeed, Mr. McCauley told Mr. Lacey in August 2021 that he lead the effort to unionize given his prior leadership's poor treatment of workers.

61. However, Mr. Lacey (and Providence HR) are not dumb. For neither are going to fire Mr. McCauley the day (or week or month) after learning of Mr. McCauley's unionizing efforts.

COMPLAINT & DEMAND FOR JURY TRIAL - 10

Instead, like any good retaliator, they will wait for an opportunity to present itself and use that opportunity to justify one's firing.

62. That "opportunity" presented itself in the late-2021/early-2022 timeframe when Providence supposedly learned for the first time that Mr. McCauley was moonlighting during his caregiver FMLA and used that moonlighting as justification for firing even though Mr. McCauley's moonlighting did not violate company policy and Mr. McCauley's supervisor was aware of Mr. McCauley's other job.

63. Providence's wrongful discharge has caused Mr. McCauley damages in an amount to be proven at trial.

(Count Five – Violation of Washington Paid Family Medical Leave Act)

64. Washington's PFMLA allows workers to take paid family medical leave from their respective employers to, *inter alia*, care for family members with serious health conditions.

65. Mr. McCauley applied for PFMLA through Sedgwick, Providence's agent for the purpose of processing PFMLA applications.

66. Providence approved Mr. McCauley's PFMLA application.

67. RCW 50A.40.010(1)(a) makes it unlawful for an employer to interfere with "any valid right" provided under RCW 50A.

68. One such right is the right to be restored to the position of employment held before the leave commenced.

69. Providence did not restore Mr. McCauley to the position he had before he departed on his approved PFMLA, instead it terminated his employment.

**COMPLAINT & DEMAND FOR JURY TRIAL** - 11

70. Providence's actions have caused Mr. McCauley damages to be proven at trial.

## IV. PRAYER FOR RELIEF

Mr. McCauley respectfully seeks:

A. All damages allowed under the law including front pay, back pay, pre-judgment interest, adverse tax consequences, liquidated damages, and general damages.

B. Attorneys' fees, costs, and litigation expenses as allowed under RCW 49.48.030, the FMLA, and the PFMLA.

C. A declaration that Defendant violated the FMLA and the PFMLA.

D. All other relief that is just and equitable.

DATED this 12th day of December 2022.

RIVERSIDE LAW GROUP, PLLC

By: _____
Matthew Z. Crotty, WSBA No. 39284
Casey M. Bruner, WSBA No. 50168
905 West Riverside Ave. Ste. 404
Spokane, Washington 99201
Telephone No. 509.850.7011

Attorneys for Plaintiff

**COMPLAINT & DEMAND FOR JURY TRIAL** - 12